888 A.2d 740

**R.W. and C.W., Individually and as the Parents and Natural Guardians of L.W., Appellants**

v.

**Scott MANZEK, Personally and in his Capacity as the Owner of 84 Services, 84 Services, Cookbook Publishers, Inc. and Giftco, Inc., Appellees.**

Supreme Court of Pennsylvania.

Argued March 7, 2005.

Decided Dec. 28, 2005.

David C. Long, Michael L. Rosenfield, John M. Ingres, for R.W. and C.W., et al.

John Vincent DeMarco, Pittsburgh, for Cookbook Publishers, Inc.

David Benson White, Pittsburgh, for Giftco, Inc.

Thomas Paul Birris, Pittsburgh, for 84 Services.

Before: CAPPY, C.J., NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## *OPINION*

Justice BAER.

In September, 1999, L.W., the ten-year-old daughter of R.W. and C.W. (Parents) was brutally raped and beaten by Timothy S. Fleming while attempting to sell him candy as part of a school fundraiser. Parents first brought an action (the federal case) in federal district court (the district court) against the Punxsutawney Area School District and its superintendent (the School District defendants) seeking liability under 42 U.S.C. § 1983 on a "state-created danger" theory, as discussed fully herein. The district court granted the School District defendants' Motion to Dismiss holding that, *inter alia,* as a matter of law, the harm befalling L.W. was not foreseeable by the School District defendants or fairly directly related to their conduct. Parents then brought a negligence action against Scott Manzek (Manzek), 84 Services, Cookbook Publishers, Inc. (Cookbook), and Giftco, Inc. (Giftco) (collectively, the Fundraising Entities) in state court. The state trial court granted the Fundraising Entities' preliminary objections relying on the district court's analysis dismissing the federal case against the School District defendants. The Superior Court affirmed. For the reasons fully explained herein, we now reverse and remand to the trial court for further proceedings consistent herewith.

As this Court sits in review of the trial court's grant of the Fundraising Entities' preliminary objections in the nature of a demurrer, we derive the salient facts solely from the allegations in Parents' complaint. We accept as true all material facts as set forth in the complaint, as well as all inferences reasonably deducible therefrom. *See Bilt–Rite Contractors, Inc. v. The Architectural Studio,* 581 Pa. 454, 866 A.2d 270, 272 (2005); *Estate of Witthoeft v. Kiskaddon,* 557 Pa. 340, 733 A.2d 623, 624 n. 1 (1999).

Pursuant to a complaint filed in the Court of Common Pleas of Indiana County, Parents allege that on September 10, 1999, all students in grades kindergarten through fifth of the Banks–Canoe Elementary School of the Punxsutawney Area School District (the School District) were instructed by Ms. Neal, the head teacher, to go to the school's all-purpose room for a fundraising meeting.[1]  L.W., a ten-year-old girl in fifth grade, was one of the students instructed to attend the meeting.  This meeting was conducted by Frank Manzek, an employee of 84 Services.[2]  He presented the fundraising activity to L.W. and the other students as a competition among classes and individuals, emphasizing the criteria to win individual and class prizes.  Frank Manzek displayed and described the prizes available to the students through their participation in the fundraising activities, including a green inflatable chair, and gave the students free gel pens to generate enthusiasm for the fundraising competition.  During the meeting, Frank Manzek distributed fundraising materials prepared by Cookbook and Giftco to the students.[3]  None of the materials contained any warnings, guidelines, or disclaimers regarding the dangers inherent in the fundraising activities being promoted by the Fundraising Entities, and Frank Manzek did not warn the students of any such dangers.

L.W. was determined to win a green, inflatable chair, which required at least fifty sales.  Parents instructed her not to enter any stranger's house in the course of fundraising.  On September 18, 1999, L.W. needed only four more sales to

[1]  Parents assert that it is the School District's annual custom and practice to conduct similar fund-raisers in all of its elementary schools to raise money for the School District.

[2]  84 Services is a Pennsylvania Corporation that specializes in packaging and selling fundraising projects and merchandise to individuals and organizations.  Scott Manzek is the owner of 84 Services.  Frank Manzek is Scott Manzek's father, and is not a party to this action.  To eliminate confusion, Frank Manzek will be referred to by his full name while Scott Manzek is referred to simply as Manzek.

[3]  Cookbook Publishers, Inc., and Giftco, Inc., are Kansas and Illinois corporations, respectively, which specialize in helping schools and nonprofit organizations raise money through consultation and research.  They also provide fundraising products and materials to various school districts nationwide.

reach her goal. Parents permitted her to walk to a friend's home approximately one mile away to sell something to her friend's mother.

On the way to her friend's home, L.W. noticed a man, Fleming, mowing the yard of a nearby house and spontaneously decided to stop at this house and attempt to make a sale. L.W. approached Fleming and, consistent with the instructions given by Frank Manzek, introduced herself and asked him whether he would like to buy some candy for a school fund-raiser. In response, Fleming indicated that his mother would be home shortly and asked to look through the brochures. He invited L.W. into his house, where she sat on a chair while he looked at the brochures. When L.W. asked if she could use the bathroom, Fleming showed her where it was. Shortly thereafter, while L.W. was in the bathroom, Fleming entered and proceeded violently to assault L.W. physically and sexually.[4]

■ Parents filed the federal case in district court asserting claims against the School District defendants under 42 U.S.C. § 1983,[5] seeking damages and injunctive relief. Parents alleged that the School District defendants violated L.W.'s Fourteenth Amendment right to substantive due process and

4. Fleming was charged with attempted criminal homicide, aggravated assault, rape, aggravated indecent assault, unlawful restraint, and involuntary deviate sexual intercourse with regard to his attack on L.W. He eventually pleaded guilty to attempted criminal homicide and involuntary deviate sexual intercourse and was sentenced to seven and one-half to fifteen years' incarceration.

5. 42 U.S.C. § 1983, entitled "Civil action for deprivation of rights" provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . .

42 U.S.C. § 1983.

her liberty interest in personal security by inducing her to participate in the school fundraiser, resulting in her suffering the vicious attack. Specifically, Parents asserted that the School District defendants were liable under the "state-created danger" theory, which establishes an exception to the general rule that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals.[6] Four elements are required under this theory: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor manifested willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actor used his authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3d Cir.), *cert. denied*, 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995); *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir.1996). Parents also asserted two pendent claims in the federal case. The first was a state-law negligence claim seeking traditional tort damages against the Fundraising Entities. The second was an assault claim against Fleming.[7]

As earlier stated, the first element of the state-created danger action required that the harm befalling L.W. as the victim was "foreseeable and fairly direct." To support their assertion that the injuries suffered by L.W. were foreseeable by the School District defendants and the fairly direct result

**6.** *See DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (holding that the Due Process Clause forbids the state itself to deprive individuals of life, liberty, or property without due process of law, but cannot fairly be extended to impose an affirmative obligation on the state to ensure that those interests do not come to harm through other means).

**7.** It appears from the record that at the time Parents filed the action in district court, Fleming was incarcerated for the attack on L.W. Initially, the district court in the federal case entered a default judgment against him. Upon dismissing the federal state-created danger action against the School District defendants, the district court in the federal case also declined to exercise pendent jurisdiction over the state-law claims, dismissing the assault claim against Fleming, and vacating the default judgment entered against him without prejudice to Parents' right to pursue the assault claim in state court.

of their conduct, Parents cited the policy of numerous parent-teacher associations and other such organizations that children should not take part in fundraisers.[8]  Additionally, Parents focused upon prior incidents where children were victims of accidents or crimes while participating in fundraisers.[9]  Accordingly, Parents asserted that the School District defendants had a duty to warn L.W. of the dangers inherent in the school fundraising activities at issue, and that their breach of this duty foreseeably and fairly directly caused the injuries sustained by L.W.

After considering the four elements necessary for a state-created danger cause of action to Parents' claim against the School District defendants, the district court found that Parents had not set forth a claim under § 1983.  The district court assumed that the third element, which requires the existence of some relationship between the School District defendants as the state actors and L.W., was satisfied.  It found, however, that Parents had failed to establish the first, second, and fourth elements.  As to the first element, the requirement that the harm be foreseeable and fairly direct, the district court found that:

> a reasonable trier of fact could not find that the [School District defendants] placed [L.W.] in danger by merely allowing a fundraiser to take place in her school.  Rather, the catalysts for [L.W.'s] injuries were her mother's unfore-

**8.**  For example, Parents cited the following:  The National Parent Teacher Association has a policy that "children should never be exploited or used as fund-raisers" and "children should not take part in fund-raising activities";  the Pennsylvania Congress of Parents and Teachers, Inc., has a policy that "children should never be exploited or used as fundraisers";  and the Director of Pennsylvania School Boards Association Insurance Trust has stated that Pennsylvania school districts are discouraged from engaging in fundraising activities that utilize children "because of all the publicity about kids getting hurt going door to door trying to raise money."

**9.**  Specifically, Parents noted that Tiffany Holzer, nine years old, was killed by a tractor-trailer while selling candy for a school fundraiser, and Edward Werner, eleven years old, was sodomized and murdered while participating in a school fundraiser.  The story of Werner's death was carried in the October 2, 1997, issue of the local *Punxsutawney Spirit* newspaper, which is published and distributed in L.W.'s neighborhood.

seeable act of permitting [L.W.] to walk a mile alone to a friend's house, and [L.W.'s] unforeseeable act of walking down a dirt road, talking to a stranger and entering a stranger's house, despite the apparent warnings of her parents not to approach strangers to sell fundraising products. Simply put, the tragic harm that [L.W.] sustained as a result of Fleming's assault is too attenuated from the actions of the [School District defendants] to support liability under the state-created danger theory.

*R.W. and C.W. v. Punxsutawney Area School District et al,* Civil Action No. 00–861, at 15 (W.D.Pa., February 28, 2001), citing *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902 (3d Cir.1997) (finding that the defendant school district and day-care operator, which leased a classroom from the district, did not use their authority to create an opportunity for harm by unlocking a back entrance to the school in order to admit contractors, where a third party entered the building and murdered a teacher).

Regarding the second element, whether the School District defendants acted with a willful disregard of or deliberate indifference to L.W.'s safety, the district court concluded that the School District defendants could not have been aware of the danger posed by Fleming to L.W., nor could they have foreseen it. Similarly, regarding the fourth element, whether the School District defendants used their authority to create an opportunity that otherwise would not have existed for Fleming's crime to occur, the district court found that the School District defendants did not place L.W. in a foreseeably dangerous position.

Rather, the district court found that L.W.'s harm came about solely through the acts of Fleming, without the level of intermingling of state conduct with private violence that creates liability under the state-created danger theory. *See Mark,* 51 F.3d at 1152 (finding that the cases in which the state-created danger theory was applied were based on discrete, grossly reckless acts committed by state actors in their peculiar positions, that rendered a discrete plaintiff vulnerable to foreseeable injury); *Wood v. Ostrander,* 879 F.2d 583 (9th

Cir.1989) (holding that a genuine issue of material fact existed as to whether a state trooper, who arrested the driver of a car, impounded the car, and left the female passenger stranded alone in a high-crime neighborhood at 2:30 a.m., where she was subsequently raped, acted with deliberate indifference to the plaintiff's interest in personal security under the Fourteenth Amendment); *Cornelius v. Town of Highland Lake,* 880 F.2d 348 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990) (finding that the state affirmatively created a dangerous situation when it allowed a prisoner with a history of violence to participate in a work-release program at a town hall where he had access to axes and knives and was supervised by one unarmed civilian, where the prisoner abducted the town clerk at knife point and held her hostage for three days); *Morse,* 132 F.3d at 915.

Accordingly, the district court granted the School District defendants' motion to dismiss the § 1983 claim and declined to exercise pendent jurisdiction over the state-law negligence claims against the Fundraising Entities and the state-law assault claim against Fleming. *R.W. and C.W. v. Punxsutawney Area School District et al,* Civil Action No. 00–861 (W.D.Pa., February 28, 2001). The dismissal of the complaint was without prejudice to Parents' right to pursue the state-law negligence claims against the Fundraising Entities, as well as the assault claim against Fleming, in state court. The United States Court of Appeals for the Third Circuit affirmed on the basis of the district court's reasoning. *R.W. and C.W. v. Punxsutawney Area School District et al,* No. 01–1570, 281 F.3d 223 (3d Cir. December 18, 2001).

Parents then "shifted gears," filing a state negligence claim against the Fundraising Entities, as opposed to the School District defendants, in the Court of Common Pleas (trial court) premising the assertion of Fundraising Entities' liability upon the contention that they encouraged and instructed L.W. to solicit strangers to purchase fundraising products (hereafter, the state negligence action).[10]

10. Parents also asserted an action against Fleming for assault, seeking compensatory and punitive damages for physically attacking and sexually assaulting L.W.

■ In Pennsylvania, the elements of a cause of action based upon negligence are:

(1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks;

(2) defendant's failure to conform to the standard required;

(3) a causal connection between the conduct and the resulting injury;

(4) actual loss or damage resulting to the plaintiff.

*Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000 (2003); *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218 (2002); *Morena v. S. Hills Health System,* 501 Pa. 634, 462 A.2d 680, 684 n. 5 (1983).

■ The initial element in any negligence cause of action is the first: that the defendant owes a duty of care to the plaintiff. *See Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166, 1168 (2000); *see also Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 890 (1994) ("Any action in negligence is premised on the existence of a duty owed by one party to another"). The existence of a duty is a question of law for the court to decide. *See Emerich v. Phila.Center for Human Dev., Inc.,* 554 Pa. 209, 720 A.2d 1032, 1034 (1998); *Huddleston v. Infertility Center of Am., Inc.,* 700 A.2d 453, 457 (Pa.Super.1997). In negligence cases, a duty consists of one party's obligation to conform to a particular standard of care for the protection of another. *See Atcovitz,* 812 A.2d at 1222. This concept is rooted in public policy. *See Bilt–Rite Contractors Inc.,* 866 A.2d at 280. In *Althaus,* we summarized the traditional considerations of public policy involved in any assessment of the existence of a duty of care as follows:

In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered.... To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times. The late Dean

Prosser expressed this view as follows: "These are shifting sands, and no fit foundation. There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question. When we find a duty, breach and damage, everything has been said. The word serves a useful purpose in directing attention to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none. In the decision whether or not there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, 'always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind.' "

*Althaus,* 756 A.2d at 1168–69 (quoting William L. Prosser, *Palsgraf Revisited,* 52 Mich. L.Rev. 1, 14–15 (1953)).

■ In deciding whether to impose a duty, we have adopted a five-factor test, focusing upon:

(1) the relationship between the parties;

(2) the utility of the defendant's conduct;

(3) the nature and foreseeability of the risk in question;

(4) the consequences of imposing the duty; and

(5) the overall public interest in the proposed solution.

*See Bilt–Rite Contractors, Inc.,* 866 A.2d at 281; *Atcovitz,* 571 Pa. 580, 812 A.2d 1218 (declining to impose a duty upon a tennis club to maintain a defibrillator on its premises, principally on the ground that the legislature has carefully regulated the use of such devices without imposing a duty on business operators to maintain such equipment); *Althaus,* 756 A.2d at 1169 (listing cases).

Before the trial court, Parents and Fundraising Entities focused on the first and third factors in the five-factor test.

Regarding the first factor, duty is predicated on the relationship that exists between the parties at the relevant time. *See Althaus*, 756 A.2d at 1168; *Morena*, 462 A.2d at 684. Regarding the third factor, duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others. *See Griggs v. BIC Corp.*, 981 F.2d 1429, 1435 (3d Cir.1992); *Huddleston*, 700 A.2d at 457, 700 A.2d 453, 457 (Pa.Super.1997); *Burman v. Golay and Co., Inc.*, 420 Pa.Super. 209, 616 A.2d 657 (1992), *appeal denied*, 533 Pa. 648, 624 A.2d 108 (1993).

Specifically, in support of their assertion that the Fundraising Entities owed L.W. a duty to warn of the dangers inherent in fundraising, Parents argued that the requisite relationship existed premised on the fact that L.W. was recruited for the fundraising effort from which the Fundraising Entities directly benefited. Further, Parents argued that the harm that befell L.W. while she was participating in the fundraiser fell within a general, broad class of risks which the Fundraising Entities' fundraising activities foreseeably created. In response, the Fundraising Entities argued that they had no special relationship with L.W. and, additionally, that Fleming's assault was not a risk reasonably foreseeable in the fundraising activity at issue.

The state trial court initially disagreed with both of the Fundraising Entities' arguments, finding that due to the students' ages, and because the Fundraising Entities encouraged them to talk to strangers and even taught them several ways to do so, the Fundraising Entities owed a duty to warn L.W. about the dangers of selling goods to strangers. Additionally, the state trial court found that Fleming's attack was a foreseeable consequence of encouraging children to sell goods to strangers. Therefore, on January 15, 2002, the trial court rejected this aspect of the Fundraising Entities' argument and found as a matter of law that they owed a duty to L.W. Further, the court specifically found that Giftco and Cookbook were not too far removed to be liable in this case because they furnished fundraising materials to Manzek and 84 Services that contained no written warning about the dangers of selling

to strangers. Accordingly, the court denied the Fundraising Entities' preliminary objections.

The Fundraising Entities then filed a motion for reconsideration with the trial court, citing the analysis of the district court in the federal case against the School District defendants. The Fundraising Entities argued that if the School District defendants could not have foreseen the danger posed to L.W., the same was true for them. Upon review, the state trial court agreed, and found the foreseeability analysis of the district court (pertaining to the federal state-created danger action against the School District defendants) "logical and persuasive," and applicable to the question of foreseeability in the state negligence action against the Fundraising Entities. Therefore, despite the contrary finding of the state trial court's prior assessment, upon reconsideration, it opined that "without foreseeability, [Parents] have not stated a valid cause of action against [the Fundraising Entities]." Accordingly, on July 30, 2002, the trial court vacated its January 15, 2002, order, granted the preliminary objections set forth by the Fundraising Entities, and dismissed the case with prejudice.[11]

Parents appealed to the Superior Court.[12] Before the Superior Court, Parents raised one issue: whether the state trial court erred as a matter of law when it held that the district court's finding regarding foreseeability in the federal case against the School District defendants was applicable to the issue of foreseeability in the state negligence action against the Fundraising Entities, who were not defendants in the federal case, and whose actions, consequently, were never analyzed in that case. In response, 84 Services and Manzek contended that Parents were collaterally estopped from re-

11. The case against Fleming was not dismissed.

12. The Fundraising Entities initially sought to quash the appeal, arguing that the order was not final because Fleming remained an active defendant. (See Pa.R.A.P. 341, providing that "an appeal may be taken as of right from any final order of an administrative agency or lower court"). The Superior Court agreed and quashed the appeal. On January 3, 2003, the state trial court entered a default judgment against Fleming, rendering final the order of July 30, 2002, and Parents appealed.

litigating the issue of foreseeability, because it had been previously litigated in the district court and court of appeals.

■ Initially, the Superior Court rejected the claim that collateral estoppel applied to preclude Parents' appeal. Specifically, the court noted that collateral estoppel applies if:

> (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

*Folino v. Young,* 523 Pa. 532, 568 A.2d 171, 174 (1990). The Superior Court was unable to find the first, second, or fourth elements of collateral estoppel because the district court's decision in the federal case was rendered against the School District defendants and in no way implicated the Fundraising Entities. The Superior Court noted that in a negligence case, the harm suffered by the plaintiff must be foreseeable to the defendant, in light of that particular defendant's conduct. *Huddleston,* 700 A.2d at 457. Thus, the Superior Court reasoned that Parents "did not have a full and fair opportunity to litigate the issue of whether the harm suffered by L.W. was foreseeable to [the Fundraising Entities] in light of the respective conduct of each [the Fundraising Entities and the School District defendants]." *R.W. v. Manzek,* 838 A.2d 801, 804–05 (Pa.Super.2003).

Next, the Superior Court addressed Parents' argument that the state trial court erred in applying the district court's reasoning to find that the Fundraising Entities, non-parties in the federal case, were unable as a matter of law to foresee the harm befalling L.W., and consequently owed no duty of care to L.W. Notwithstanding its rejection of the applicability of collateral estoppel, the Superior Court found no error in the state trial court's adoption of the district court's analysis

regarding the School District defendants in the federal case as justification for finding the lack of foreseeability equating to a lack of duty resulting in dismissal of Parents' action against the Fundraising Entities in state court:

Representatives of the school presumably solicited 84 Services for the fundraising effort, approved the fundraising materials and attended the fundraising meeting. The school must have been familiar with fundraising efforts since, as appellants allege, it was their custom and practice to conduct similar meetings at all of its elementary schools. The school district, moreover, has a closer nexus to its students than a fundraising company [does]. If, as the district court concluded, the school and its superintendent could not have foreseen the harm suffered by L.W., it is certainly reasonable to conclude the company the district solicited to give the fundraising presentation and its owner likewise could not have foreseen the harm. Moreover, it is clearly reasonable to conclude Giftco, Inc., and Cookbook, Inc., both of whom merely supplied fundraising brochures and products to 84 Services, could not have foreseen the harm.

*R.W.*, 838 A.2d at 807 (internal citations omitted). Thus, the Superior Court affirmed the trial court' dismissal of the complaint.

Parents sought allocatur asking us to decide whether the state trial court and Superior Court properly relied upon the district court's conclusions in the federal case against the School District defendants in granting the Fundraising Entities' preliminary objections and dismissing the Parents' state negligence action. We begin by reviewing the familiar standard of review applicable to assessing preliminary objections in the nature of a demurrer. In such an instance, all material facts as set forth in the complaint, as well as all inferences reasonably deducible therefrom, must be accepted as true. *Bilt–Rite Contractors*, 866 A.2d at 272. Cognizant of this factual bias in a plaintiff's favor, we must determine whether there is no potentiality of recovery. *Small v. Horn*, 554 Pa. 600, 722 A.2d 664 (1998). "Where a doubt exists as to whether

a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Bilt–Rite Contractors, Inc.,* 866 A.2d at 274; *MacElree v. Phila. Newspapers, Inc.,* 544 Pa. 117, 674 A.2d 1050, 1056 (1996) (quoting *AM/PM Franchise v. Atlantic Richfield,* 526 Pa. 110, 584 A.2d 915, 921 (1990)).

As we have explained multiple times, Parents' complaint in the federal case was against the School District defendants; their complaint in the state negligence action is against the Fundraising Entities. In stating their claim for negligence against the Fundraising Entities, Parents' averred in the designated paragraphs of their complaint the following: [13]

Paragraph 11: The fundraising meeting was conducted by Frank Manzek as an agent and employee of Manzek and 84 Services.

Paragraph 12: The students attending the fundraising meeting, including L.W., were of tender age and incapable of appreciating the dangers of fundraising activities and methods.

Paragraph 14: Frank Manzek at this meeting described the fundraising activities to L.W. and other students. He "belabored" the criteria for winning prizes, and displayed some of the available prizes. He primed the students' enthusiasm for the fundraising competition. He gave each a free "gel pen."

Paragraph 15: Fundraising materials prepared by defendants Cookbook and Giftco were distributed by Frank Manzek to the students, including L.W., that "specifically contradicted the warnings of L.W.'s parents not to approach strangers to sell fundraising products"

Paragraph 16: No one told L.W. about the dangers inherent in the fundraising competition; notwithstanding that Manzek and 84 Services knew or should have known of the dangers "exploiting" children as fundraisers.

Paragraph 17: None of the materials distributed to L.W. contained any "warnings, guidelines or disclaimers regard-

**13.** The following paragraphs quote verbatim from the complaint only where quotation marks are employed. Otherwise these paragraphs synthesize the complaint's substantive factual averments.

ing the dangers inherent in the fundraising activities being promoted" by the Fundraising Entities.

Paragraph 18: As the result of the fundraising representations of Frank Manzek, L.W. was determined to win a prize. Although her parents warned her to not go to stranger's homes, "these general warnings could not compete with defendant Manzek's promises of specific prizes and classroom parties. By conducting the fundraising activities as a competition, defendants ... incited and encouraged [L.W.] ... to ignore the warnings and guidelines of their parents, and their zeal to secure bigger and better prizes for both themselves and for their classrooms at large."

Paragraph 21: When L.W. approached Fleming's home, consistent with the instructions given by Frank Manzek, she approached Fleming, introduced herself and asked him to buy candy as part of the school fundraiser.

Paragraph 35: The dangers to which defendants exposed L.W. were foreseeable in that national groups recommended against children being used in fundraising and other children had been killed while participating in fundraising.

Paragraph 36: Notwithstanding the foreseeability of danger, defendants "evidenced a reckless disregard and deliberate indifference to the safety of L.W. and other students by structuring the fundraising as a prize winning competition; encouraging L.W. to solicit strangers; and not providing L.W. or her parents with sufficient warnings."

Paragraph 39: Defendants had actual or constructive knowledge of the dangers inherent in conducting school fundraising activities as prize winning competitions and encouraging elementary school students to approach strangers to sell fundraising merchandise.

Paragraph 40: Defendants had actual or constructive knowledge that neither the fundraising meeting nor the fundraising materials warned L.W. of the dangers inherent in the fundraising activities and methods.

Resolution of this case turns on whether the harm that befell L.W. was sufficiently foreseeable to the Fundraising Entities to establish the requisite duty from them to L.W. Parents argue that when their well-pleaded facts are assessed in light of the noted and oft-stated standard for determination of the merits of preliminary objections and distinct from the shadow of the federal case, which Parents rightfully point out was against different defendants, they clearly establish such duty and therefore set forth a cause of action.

The Fundraising Entities, echoing the rationale of the Superior Court, note correctly that Parents pleaded that the School District held fundraisers annually in each of its elementary schools. From this well-pleaded and therefore accepted fact, the Superior Court presumed, and the Fundraising Entities argue, that the School District must have solicited the Fundraising Entities' services and been familiar with their efforts. Moreover, again premised on the same factual foundation, the Fundraising Entities, once more following the Superior Court's lead, argue that there is a necessary inference in this case that the School District defendants maintained a closer relationship with L.W. than did they. Thus, the argument concludes, assuming the School District's superior familiarity with the fundraising activities and with L.W. personally, if her attack was not foreseeable to the School District defendants, it surely could not have been foreseeable to the more removed and unfamiliar Fundraising Entities.

We agree with Parents. As set forth in substantial detail above, they averred that the Fundraising Entities had actual or constructive knowledge of the dangers inherent in conducting school fundraising activities as prize winning competitions and in encouraging elementary school students to approach strangers to sell fundraising merchandise. Parents averred also that notwithstanding that the Fundraising Entities knew or should have known of the dangers of exploiting children as fundraisers, the Fundraising Entities nevertheless failed to warn the students or their parents, including Parents herein, either verbally or through the written materials distributed to direct the fundraising activities. Moreover, Par-

ents assert that these inherent dangers were exasperated by the Fundraising Entities when they enticed the children, including L.W., into dangerous activity by offering prizes and classrooms parties; whetting the children's appetite and thereby encouraging dangerous activity by showing the prizes and handing out gel pens to each student. Accepting these facts and all inferences drawn therefrom, as we must, we believe it evident, and indeed obvious, that Parents have stated a cause of action against the Fundraising Entities. Whether these facts will survive discovery and motions for summary judgment, and, if so, whether Parents can meet their burden before a jury and obtain recovery is for another day. It was, however, error to dismiss this case on preliminary objections.

We believe that the trial and Superior courts erred in deferring to the district court's analysis notwithstanding a wholly distinct set of defendants in that case. We believe it unnecessary to engage in a comparative analysis of which set of defendants, the School District defendants of the Fundraising Entities, knew L.W. or understood the dangers inherent in employing children as fundraisers better. Whether the district court was correct in dismissing the case against the School District defendants in the federal state-created danger case is simply not before us. What is before us is whether the facts contained in the instant complaint set forth a cause of action for negligence against the Fundraising Entities pursuant to Pennsylvania law. Simply said, as explained above, they do. The attempt by the trial and Superior courts to look beyond the four corners of the complaint, to draw inferences from the district court's holding and to employ those inferences as support for dismissal of this case was improper. We decline to permit such extrinsically premised supposition. Accordingly, we respectfully reverse and remand for further proceedings consistent with this opinion.[14]

14. We recognize that an undercurrent of this appeal is how the "foreseeable and fairly direct" element of a state created danger cause of action compares to the foreseeability analysis necessary to establish a duty in a state negligence cause of action. While this is an interesting issue, because of our disposition of this case is based on the different

Justice NIGRO, Justice NEWMAN and Justice EAKIN join the opinion.

Justice CASTILLE did not participate in the consideration or decision of this case.

Chief Justice CAPPY files a dissenting opinion.

Justice SAYLOR dissents.

Chief Justice CAPPY, Dissenting.

Because I cannot agree with the reasoning or the conclusions drawn by the majority, I must respectfully dissent.

In my opinion, I do not believe that Appellees needed to provide a warning that there exist in the world evil people who could possibly cause intentional harm to minor students. Of course, it is an unfortunate fact that heinous acts are committed against small children by people such as Timothy Fleming ("Fleming"). And yet, this does not make it incumbent upon defendants such as Appellees to provide a warning of this generalized risk. Appellees had no specific knowledge that Fleming posed such a risk to L.W.[1] In the absence of such particularized knowledge, I am chary of imposing on individuals and business enterprises a duty to warn that unknown third parties could potentially cause harm by engaging in criminal acts.

Furthermore, even if I were to agree that Appellees had such a duty, I do not see how Appellants will ultimately prevail in this matter. Although this issue has not been raised before this court, in my opinion, it is apparent that Appellants' complaint has tacitly conceded that there is no causation in

parties to the state and federal cases, it is not before us and must consequently await another day.

1. This is in contrast to *Emerich v. Philadelphia Center for Human Development, Inc.*, 554 Pa. 209, 720 A.2d 1032 (1998). In *Emerich*, a psychiatric patient informed his psychiatrist that he intended to kill his girlfriend. In light of there being such a specific threat posed by a particular individual, this court held that the psychiatrist had a duty to warn the girlfriend of the boyfriend-patient's threat to murder her. In the matter *sub judice*, however, there is no allegation that Appellees had knowledge that Fleming posed such a threat.

this matter. In a failure to warn case, a defendant will not be held liable, even in the absence of making a warning, when the plaintiff already knew of the danger which the missing warning allegedly should have cautioned and engaged in the dangerous activity anyway. *See Phillips v. A–Best*, 542 Pa. 124, 665 A.2d 1167, 1171 (1995). In the instant matter, the complaint admits that Appellants had specifically warned L.W. against approaching strangers in her fundraising. *See* Complaint at ¶¶ 15 and 18. In essence, Appellants had already given the warning that they claim Appellees negligently failed to convey. Thus, it cannot be said that Appellees' failure to provide a warning in any fashion caused L.W.'s tragic injuries.

For these reasons, I disagree with the majority's order reversing the order of the Superior Court and must respectfully dissent.