**Neil PAKETT, D.M.D. and Jeanette Pakett, h/w**

v.

**THE PHILLIES, L.P.**

**Neil Pakett, D.M.D. and Jeanette Pakett, h/w**

v.

**The City of Philadelphia**

**Appeal of: Neil Pakett, D.M.D. and Jeanette Pakett, h/w**

**Neil Pakett, D.M.D. and Jeanette Pakett, h/w**

v.

**The Phillies, L.P.**

**Neil Pakett, D.M.D. and Jeanette Pakett, h/w**

v.

**The City of Philadelphia**

**Appeal of: Neil Pakett, D.M.D. and Jeanette Pakett, h/w.**

Commonwealth Court of Pennsylvania.

Argued March 3, 2005.

Decided March 29, 2005.

Miriam A. Newman, Philadelphia, for appellants.

Robert J. Foster, King of Prussia, for appellee, The Phillies, L.P.

John J. Hare, Philadelphia, for appellee, The City of Philadelphia.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge (P), and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Neil Pakett, D.M.D., (Pakett) and his wife, Jeanette Pakett (together, Plaintiffs), appeal from the October 21, 2004, and October 26, 2004, orders of the Court of Common Pleas of Philadelphia County (trial court). The orders, respectively, grant summary judgment in favor of the City of Philadelphia (City) and The Phillies, L.P., (The Phillies), (together Appellees), and dismiss Plaintiffs' negligence actions against Appellees for injuries Pakett sustained when he was struck by a foul ball during a Philadelphia Phillies baseball game at Veterans Stadium. We affirm.

On January 25, 2001, Pakett was sitting in Veterans Stadium in Section 232, Row 5, Seat 8, which is located behind home plate, toward third base. Pakett had occupied that same seat six or seven times in as many years. Pakett understood the danger posed by baseballs coming into the stands,[1] and Pakett knew that four or five foul balls per game were hit in the immediate vicinity of that seat. On prior occasions, members of his party had brought baseball mitts to the game, but no one ever caught a baseball while occupying Seat 8. (Findings of Fact, Nos. 2–3.)[2]

There was a backstop behind home plate comprised of a permanent, stationary metal framework affixed to concrete with both vertical and horizontal poles; removable nylon netting between the poles extended vertically above Pakett's seat. The backstop was installed in 1971, and the netting was added in the early 1980s. The frame extended from the first base side to the third base side, with dimensions that had not changed during the thirty-year existence of Veterans Stadium. In 1996, a larger plexiglass barrier was installed behind the backstop to protect patrons sitting in ground level seats behind home plate from batted balls. Pakett's Seat 8 was eighty feet from home plate, situated

1. On the back of every ticket, spectators are warned that they enter the stadium at their own risk and that injuries could occur during a game. There also are warnings posted on stadium walkways, between the concourses and by means of a video cartoon played in the middle of the first inning of each game telling spectators to be aware of balls and bats leaving the playing field. Pakett understood that, if a baseball came into the stands, he could suffer an injury. (Findings of Fact, No. 4.)

2. The trial court issued two opinions with identical findings in each.

to the left of this plexiglass shield. (Findings of Fact, Nos. 7–9.)

In the bottom of the first inning, a player hit a foul ball that flew backwards into Section 232. Pakett saw the ball coming and attempted to catch it with his bare hand because he wanted a souvenir. Unfortunately, Pakett did not catch it, and the ball hit Pakett in the right eye. As a result, Pakett suffered temporary blindness and required surgery. He still has not regained all of his vision. (Findings of Fact, Nos. 5–6.)

Plaintiffs filed separate suits against the City and The Phillies.[3] In the complaints filed against Appellees, Plaintiffs alleged, *inter alia,* that the City and The Phillies shared responsibility for the condition and safety of Veterans Stadium and that Plaintiffs' injuries and damages were a direct and proximate result of Appellees' negligence in failing to erect and maintain a backstop that was adequate to protect spectators in certain seats, thereby exposing those spectators to a dangerous condition and an unreasonable risk of harm. (R.R. at 27–33; 50–57.)

On August 30, 2004, and September 7, 2004, respectively, The Phillies and the City each filed a motion for summary judgment, (R.R. at 124–26; 255–63), which the trial court granted by orders dated October 21, 2004, and October 26, 2004. Applying what is generally known as the "no-duty" rule, the trial court held that, as a matter of law, neither the City nor The Phillies had a duty to protect Pakett from, or warn Pakett of, the risk of being struck by a foul ball while he was sitting in the stands watching a game.[4] (Plaintiffs' brief at Exhibit A and Exhibit B.) In their consolidated appeal to this court, Plaintiffs argue that the trial court erred in granting summary judgment to Appellees based on application of the "no-duty" rule.[5] We disagree.

Any negligence action is premised, initially, on the existence of a duty owed by one party to another.[6] Plaintiffs

---

3. Pakett also filed an action against architectural firm Ewing Cole Cherry Brott, Inc., which was dismissed pursuant to a stipulation filed on October 30, 2003. (R.R. at 116–17.)

4. Although the trial court based its decision on Appellees' lack of duty toward Plaintiffs, the trial court also found that: (1) Appellees did make reasonable efforts to protect and warn spectators from the danger of foul balls; (2) Pakett actually knew and appreciated the dangers which he might encounter and had voluntarily assumed the risk of foul balls coming into the area where he was seated; and (3) Pakett did have sufficient reaction time to get out of the way of the foul ball but, instead, intentionally attempted to catch it to obtain a souvenir. (Trial ct. op., 10/21/04 at 11, 10/26/04 at 9–10; Pakett's brief at Exhibit A and Exhibit B.)

5. Our scope of review on appeal from a grant of a motion for summary judgment is limited to determining whether the trial court committed a legal error or abused its discretion. *Kelly v. Curwensville Area High School,* 141

Pa.Cmwlth. 449, 595 A.2d 787 (1991). A motion for summary judgment may be granted only when there is no genuine issue of material fact as to a necessary element of a cause of action, and the moving party has established entitlement to judgment as a matter of law. Pa. R.C.P. No. 1035.2; *Herman v. Greene County Fair Board,* 112 Pa.Cmwlth. 615, 535 A.2d 1251 (Pa.Cmwlth.1988). Additionally, summary judgment may be entered only in cases that are clear and free from doubt. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986). As with all summary judgment cases, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998).

6. The elements of a cause of action in negligence are: (1) the duty or obligation recognized by law, requiring the actor to conform to a certain standard with respect to the in-

argue that they have set forth a *prima facie* case against Appellees for breach of their duty as operators of a baseball stadium to properly construct and maintain a backstop that would provide adequate protection and would allow time for a person to respond to foul balls in an area of the stadium where foul balls occur with great frequency, speed and force,[7] and he contends that the trial court erred in failing to recognize this duty as a matter of law.

As support for this argument, Plaintiffs rely on *Jones v. Three Rivers Management Corporation,* 483 Pa. 75, 394 A.2d 546 (1978), in which our supreme court discussed the "no-duty" rule applicable to spectator sports but declined to apply it. In that case, Evelyn Jones filed suit in negligence for injuries suffered after she was struck by a foul ball during pre-game batting practice at Three Rivers Stadium. At the time, Jones was properly using an interior walkway behind the stands at the stadium. The court first recognized that an operator of a place of amusement is not an insurer of his patrons and, therefore, will be liable for injuries to his patrons only where he fails to use reasonable care in the construction, maintenance, and management of the facility, having regard to the character of the exhibitions given and the customary conduct of patrons invited. *Id.* The court then noted the well-settled

principle that a ballpark patron knowingly accepts the reasonable risks inherent in and incident to the game. *Id.*

In light of these principles, the court in *Jones* concluded that a "no-duty" rule applies to bar a plaintiff's claims for injuries suffered as a result of common, frequent and expected risks inherent during the activity in question; such individuals are deemed to anticipate and, therefore, assume the obvious risks of participating in or viewing the activity. *Id.* "Only when the plaintiff introduces adequate evidence that the amusement facility in which he was injured deviated in some relevant respect from established custom will it be proper for an 'inherent-risk' case to go to the jury." *Id.* at 84, 394 A.2d at 550.

However, the court also stressed that, even in a "place of amusement," not every risk is reasonably expected in or inherent to the game, and, therefore, application of the "no-duty" rule is limited. If the risk encountered by a plaintiff is not common, frequent or expected, then the ordinary rules of negligence apply, and the plaintiff has no burden to introduce evidence with respect to the established custom of such facilities. *Id.* Applying this distinction, the court in *Jones* then concluded that *the "no-duty" rule, ordinarily applicable to patrons seated in the stands of the ballpark, should not be extended to a situation*

jured party; (2) the actor's breach of that duty; (3) a causal connection between the actor's conduct and the resulting injury; and (4) actual damages. *Talarico v. Bonham,* 168 Pa.Cmwlth. 467, 650 A.2d 1192 (1994). Absent a legal duty owed to the injured party, no cause of action can lie. *Id.*

7. Plaintiffs' expert, Richard E. Daniels, opined that: (1) the backstop should have been wider, to afford spectators a one second response time when confronted by a fly ball coming their way; and (2) the warnings provided to spectators were insufficient and ineffective. (Findings of Fact, No. 10.)

Plaintiffs' expert, Michael S. Adams, indicated that the distance between the backstop and home plate was 66.23 feet and that the backstop was 56' 4" wide, which did not meet the recommendations set forth in the Eighth Edition of Architectural Graphic Standards (1998 American Institute of Architects). Adams concluded that if the backstop had been placed at a different angle, and its dimensions had been larger, Row 5, Seat 8 would have been protected. (Findings of Fact, No. 11.) However, Daniels conceded that there is no uniform industry custom regarding backstop configuration. (Plaintiffs' brief at 16, n. 4.)

*where a plaintiff was struck by a batted baseball while standing in an interior walkway of the stadium* since the risk of harm in viewing the field from the concourse area could not be characterized as "part of the spectator sport of baseball." *Id.* at 86–87, 394 A.2d at 552. The court reasoned that the injury Jones suffered was not inherent to baseball but, instead, resulted from a particular architectural design of the facility (open archways that allowed errant balls to enter the stadium's interior areas).

Plaintiffs contend that here, as in *Jones,* the "no-duty" rule is inapplicable because the risk to which Pakett was exposed was not one of the risks inherent to the game of baseball. Plaintiffs assert that, in concluding otherwise, the trial court mischaracterized the unreasonable and extraordinary nature of the risk to which Pakett was exposed. Pakett maintains that, as in *Jones,* his action was based on an alleged construction defect, i.e., a backstop configuration that did not comply with applicable engineering principles and did not afford spectators in dangerous locations adequate protection or sufficient response time to either catch or move away from the a foul ball. We cannot agree.[8]

In order to defeat summary judgment, Plaintiffs had to show either that the danger was not an "inherent risk" of the game of baseball *or* that the backstop in Veterans Stadium deviated in some relevant way from the established custom in ballparks. *Jones.* Under the present facts, Plaintiffs cannot satisfy either of these burdens; therefore, they have not established an exception to the "no-duty" rule.

■ One who attends a baseball game as a spectator can properly be charged with anticipating as inherent to baseball the risk of being struck by a foul ball while sitting in the stands during the course of a game. *Jones.* In *Romeo v. Pittsburgh Associates,* 787 A.2d 1027 (Pa.Super.2001), *appeal denied,* 568 Pa. 722, 797 A.2d 915 (2002), the superior court applied the "no-duty" rule to sustain a baseball team's preliminary objections to the complaint brought by a patron injured when a foul ball hit her in the mouth while she was seated in a location where there was no barrier shielding her from the field. In doing so, the court distinguished *Jones,* where the supreme court found the "no-duty" rule inapplicable because the risk of being hit by a ball in the interior concourse was not a common one, from the situation where spectators face the basic risk inherent to the game—being hit by a foul ball while sitting in the stands. The same distinction can be made here.

Whereas the plaintiff in *Jones* was injured before the start of the game and was neither in close proximity to the playing field nor cognizant of the risk involved, Pakett was struck during the course of a game, while sitting near the playing surface in a seat that he had occupied on other occasions. Pakett was well aware that foul balls entered this particular area from the playing field several times during a single game; in fact, persons in his party brought mitts to the game hoping to catch one of these balls. Indeed, when the ball came toward Pakett, he did not try to avoid it but attempted to catch it. As the

8. While the existence of a duty is a question of law for the court, whether there is a breach of that duty is a question of fact for the factfinder. Because we conclude that the "no-duty" rule is applicable in this case, we do not need to address Plaintiffs' arguments that: (1) the trial court erred in concluding that Plaintiffs failed to present sufficient evidence to establish that Appellees breached their duty of care to Plaintiffs; and (2) the trial court erred in determining that Plaintiffs are barred from recovery based on Pakett's assumption of the risk of injury he sustained.

United States Court of Appeals for the Third Circuit noted, "The risk of being . . . hit, with a chance to catch the foul and keep the ball, is one of the exciting thrills of attendance at the game. The fan cannot recover if the ball hits him instead of his catching it." *Boynton v. Ryan,* 257 F.2d 70, 71 (3rd Cir.1958).

In addition, we agree with Appellees that Plaintiffs cannot meet their burden by raising only a general challenge to the adequacy of the backstop, without reference to any standard set by Major League Baseball or other ballpark norms. *Jones.* In this case, Plaintiffs produced no evidence that the screening of this Section 232 deviated in some relevant aspect from that customarily employed at other baseball stadiums.[9]

█ Further, the argument that Pakett relied on the protection of the backstop is unavailing. By placing the protective screen behind home plate, Appellees did not assume a duty to use reasonable care with respect to the design of the barrier beyond seeing that it did not deviate from the established customs used in baseball stadiums. To conclude otherwise would lead to absurd results in that it would require an amusement facility to have screens encircling the entire field, *see Romeo,* or, alternatively, would allow an amusement facility to avoid liability by leaving stands unprotected, but expose the facility to liability when it erects protective barriers. *See Petrongola v. Comcast–Spectacor, L.P.,* 789 A.2d 204 (Pa.Super.2001), *appeal denied,* 569 Pa. 694, 803 A.2d 736 (2002).[10]

Accordingly, because the trial court did not err in concluding that recovery is foreclosed to Plaintiffs, we affirm.

### ORDER

AND NOW, this 29th day of March, 2005, the orders of the Court of Common Pleas of Philadelphia County, dated Octo-

---

**9.** Indeed, Plaintiffs' brief appears to tacitly acknowledge this point by claiming that they are not required to establish that Veterans Stadium deviated from industry custom in order to make their negligence claim. (Plaintiffs' brief at 16, n. 4.)

**10.** In *Petrongola,* a spectator was injured while sitting in his seat at an ice hockey game when he was struck in the mouth by a puck that traveled through a gap in the protective plexiglass surrounding the playing surface. He brought an action against the owners and operators of the ice hockey arena alleging negligence in the design and maintenance of the playing area in that its configuration deviated in some relevant way from the applicable standards. The superior court affirmed the grant of summary judgment based on application of the "no-duty" rule, stating:

In the instant case, being struck by a puck while seated in attendance at a hockey game is an inherent risk associated with the game. Appellant was a season ticket holder with the Phantoms. He regularly attended the games and knew that pucks can, and often do, leave the ice during play, and enter the stands. Unlike the plaintiff in *Jones,* the puck struck Appellant while he was seated in his regular seat, during the course of the game. That Appellant's selected seats were only partially protected by a plexiglass shield does not alter or diminish the fact that the risk of being hit by an errant puck is, as a matter of law, a "common, frequent, and expected" part of the game. Moreover, the standard enunciated in *Jones* is that the design must deviate from the established custom in some relevant way.

*Id.* at 211, 394 A.2d 546 (citations omitted). *See also Pestalozzi v. Philadelphia Flyers, Ltd.,* 394 Pa.Super. 420, 576 A.2d 72 (1990) (holding that, where the plaintiff previously attended a professional hockey game and should have been familiar with the inherent risks involved, the "no-duty" rule applied to bar the negligence action of a spectator injured by an errant puck, even though he sought to avoid injury by purchasing seats behind protective plexiglass).

ber 21, 2004, and October 26, 2004, are hereby affirmed.