**John McMAHON, Petitioner**

v.

**PLEASANT VALLEY WEST ASSOCIA-TION a/k/a Pleasant Valley West Club and Lee Conklin and Susan Conklin, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2008.

Decided June 13, 2008.

Andrew R. Spirit, Philadelphia, for petitioner.

Lindsay D. Liebman, Philadelphia, for respondent, Pleasant Valley West Association a/k/a Pleasant Valley West Club.

BEFORE: LEADBETTER, President Judge, LEAVITT, Judge, FLAHERTY, Judge.

OPINION BY Senior Judge FLAHERTY.

John McMahon appeals the order of the Court of Common Pleas of Carbon County (trial court) granting the summary judgment motion of the Pleasant Valley West Association a/k/a Pleasant Valley West Club (Association), and dismissing the Association as a party in a civil action filed by McMahon. We affirm.

The Pleasant Valley West subdivision is a private planned residential community located in Jim Thorpe, Carbon County, that is governed and managed by the Association, a non-profit corporation which operates as a homeowners association under the Pennsylvania Uniform Planned Community Act, 68 Pa.C.S. §§ 5101—5414 (UPCA). McMahon owns property located at 18 Cheyenne Circle in the subdivision. Lee Conklin owns property in the subdivision adjacent to McMahon's, located at 20 Cheyenne Circle, where he resides with his wife, Susan Conklin.

On July 28, 2002, McMahon's roommate, Steven Liptak, attended a meeting of the Association's board of directors to complain about two pit bull dogs owned by Lee Conklin. At the meeting, Liptak asserted that the dogs' aggressive behavior was "terrorizing" the community. On July 29, 2002, the Association sent Conklin notice of the complaint, and requested that he confine the dogs to his property and otherwise keep them on a leash as required by the Association's rules and regulations in effect at that time. The notice was sent to

the wrong address and was not received by Conklin.

On October 13, 2004, McMahon was standing in his driveway loading his car when he was attacked and injured by Conklin's dogs. The dogs were unleashed and ran directly from Conklin's property onto McMahon's property where the attack occurred.

On September 26, 2005, McMahon filed the instant civil action in the trial court against the Conklins and the Association based on injuries he purportedly suffered as a result of the attack. On November 10, 2005, McMahon filed an amended complaint in which he alleged, *inter alia*, that his injuries were caused by the negligence of both the Conklins and the Association. More specifically, McMahon alleged that the Association was negligent: (1) by failing to establish and enforce rules and regulations requiring the Conklins to maintain, control and confine the dogs on their property; and (2) by violating its duty to exercise reasonable care to prevent the harm flowing from the Conklins' failure to control and confine the dogs on their property based on its knowledge of the violent propensities of the pit bull breed prior to the attack. On April 27, 2006, the Association filed an answer and new matter to the amended complaint.

On December 8, 2006, the Association filed a motion for summary judgment in which it sought to be dismissed as a party to the case. More specifically, the Association alleged that it should be dismissed as a party because: (1) the UPCA prohibits a homeowners association from regulating a property owner's conduct other than that with respect to the roads, recreational facilities and other common areas of the subdivision; and (2) it has no legal duty to implement or enforce rules or regulations concerning the behavior of Conklin's dogs while on private property in the subdivi-

sion. On March 6, 2007, McMahon filed an answer to the Association's motion for summary judgment.

On May 11, 2007, following argument, the trial court issued an order disposing of the Association's motion for summary judgment. Initially, the trial court determined that it found "[t]he Association's argument that it no longer has the authority under the UPCA to regulate animals as they affect the overall use and enjoyment of the community to be unpersuasive." Trial Court Opinion at 6 (citations omitted).

With respect to the Association's duty to exercise reasonable care, the trial court noted that the determination of whether a duty of care exists is a question of law, and is based upon a consideration of: (1) the relationship between the parties; (2) the utility of the defendant's conduct; (3) the nature and foreseeability of the risk in question; (4) the consequences of imposing a duty; and (5) the overall public interest in the proposed solution. *Id.* at 8–9 (citing *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740 (2005)). Regarding the duty of care in this case, the trial court determined that the issue "[b]ecomes under what circumstances, if any, does a homeowners association which has the power to regulate animals within its community, but chooses not to do so, nevertheless have a duty to protect residents within the community against a dangerous dog owned by another property owner." Trial Court Opinion at 7.

The trial court noted that several jurisdictions have recognized an association's duty to exercise due care for its residents' safety in areas under its control. *Id.* at 9–10. The court recognized that "[t]he association's liability extends to those parts of the premises over which it has retained the right of control and which are responsible for the injury. Additionally, the as-

sociation's duty to safeguard these common areas extends not only to physical conditions on the land but also to dangerous activities on the land." *Id.* at 11 (citing *Smith v. King's Grant Condominium,* 418 Pa.Super. 260, 614 A.2d 261 (1992), *aff'd,* 537 Pa. 51, 640 A.2d 1276 (1994) and *Martinez v. Woodmar IV Condominiums Homeowners Association, Inc.,* 189 Ariz. 206, 941 P.2d 218 (1997)). The trial court acknowledged that some jurisdictions have held that a dangerous condition of the premises includes the presence of a vicious dog where the association has knowledge of the dog's dangerous propensities and a right or duty to control the dog's presence. *Id.* at 12.

However, the trial court noted that, in this case "[t]he Association did not own, control or manage the dogs, the property where they were kept, or the premises where the alleged attack occurred." *Id.* at 17. In addition, the court noted that "[M]cMahon has not proven that the Association had the right to remove the Conklins' animals or to evict the Conklins and their dogs from their property.... At most, McMahon has shown that the Association had the authority, through its declaration and the UPCA[1], to regulate the Conklins' behavior in maintaining their dogs and to enforce such regulations through, for example, written warnings, fines, or restrictions on the use of common facilities.... [2]" *Id.* at 18 (citing *Palermo v. Nails,* 334 Pa.Super. 544, 483 A.2d 871 (1984) and *Uccello v. Laudenslayer,* 44 Cal.App.3d 504, 118 Cal.Rptr. 741 (1975)). The court also noted that, in the absence of some special relationship by which the Association could be held liable for the actions of third parties, "[w]e know of no case imposing liability for injuries caused by a tenant's/owner's dog on property not owned or possessed by the landlord/association, or under their control. To the contrary, the opposite is true." *Id.* at 21 (citations omitted).

Based on the foregoing, the trial court concluded that "[b]ecause McMahon has not proven that the Association had the ultimate right to remove or confine Conklins' dogs, or to take possession of the Conklins' property, McMahon has not proven that the Association can be held legally responsible for his injuries." *Id.* at 22. As a result, the trial court issued the instant order granting the Association's motion for summary judgment, and dismissing the Association as a party in the civil action filed by McMahon.[3] McMahon

1. *See, e.g.,* Section 5302(a)(11) of the UPCA, 68 Pa.C.S. § 5302(a)(11) ("[E]xcept as provided in subsection (b) and subject to the provisions of the declaration and the limitations of this subpart, the association, even if unincorporated, may ... [i]mpose charges for late payment of assessments and, after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws and rules and regulations of the association.").

2. *See, e.g,* the Association's General Rules and Regulations regarding Enforcement of Rules and Regulations ("[T]he Board of Directors of [the] Association or a designated security officer shall have the authority to enforce these Rules and Regulations, and to issue citations for violations thereof.... The fine schedule, except for specific offenses discussed elsewhere in these Rules, shall be as follows: a. **FIRST OFFENSE**—warning notice[;] b. **SECOND OFFENSE**—not to exceed twenty-five ($25.00) dollars[;] c. **THIRD OFFENSE**—not to exceed one hundred ($100.00) dollars[;] d. **SUBSEQUENT OFFENSE**—not to exceed three hundred ($300.00) dollars...."). Reproduced Record (RR) at 210a.

3. By order dated June 11, 2007, the trial court amended its order of May 11, 2007 to expressly state that the order was appealable under Pa.R.A.P. 1311(b) because it involved a controlling question of law as to which there is a substantial ground for a difference of opinion, and that an immediate appeal would materially advance the ultimate termination

then filed the instant appeal of the trial court's order.[4,5]

In this appeal, McMahon claims that the trial court erred in granting the Association's motion for summary judgment, and in dismissing the Association as a party in this case. More specifically, McMahon claims: (1) the trial court erred in its application of the recognized standard used to determine the duty of care owed to him by the Association; (2) the trial court erred in adopting a new standard to determine the duty of care owed to him by the Association; and (3) the trial court erred in determining that the Association did not violate its duty of care. The record demonstrates, however, that the trial court properly granted the Association's motion for summary judgment.[6]

Initially, we note that the elements of a cause of action based upon a claim of negligence are: (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) the defendant's failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff. *R.W.* The existence of a duty, as an element of negligence, is a question of law for the court to decide. *Id.* If a plaintiff fails to establish one of the essential elements of actionable negligence, a defendant has valid grounds for summary judgment. *Braxton.* Thus, as a matter of law, no recovery can lie against a defendant absent a legal duty owed to the injured plaintiff. *Id.*

In this case, McMahon alleged that the Association failed to protect him from the injuries inflicted by the Conklins' dogs by: (1) by failing to establish and enforce rules and regulations requiring the Conklins to maintain, control and confine the dogs on their property; and (2) by violating its duty to exercise reasonable care to prevent the harm flowing from the Conklins' failure to control and confine the dogs on their property based on its knowledge of the violent propensities of the pit bull breed prior to the attack.[7]

of the case. By order dated September 4, 2007, this Court granted McMahon's petition for permission to appeal the trial court's order of May 11, 2007.

4. McMahon initially appealed the trial court's order to the Pennsylvania Superior Court. However, by order dated July 25, 2007, the Superior Court transferred the instant appeal to this Court.

5. This court's scope of review of a trial court's order granting summary judgment is limited to determining whether the trial court committed a legal error or abused its discretion. *Pakett v. The Phillies, L.P.,* 871 A.2d 304 (Pa. Cmwlth.2005). A motion for summary judgment may only be granted where there is no genuine issue of material fact as to a necessary element of a cause of action, and the moving party has established entitlement to judgment as a matter of law. Pa.R.C.P. No. 1035.2; *Pakett.* In addition, summary judgment may only be entered in cases that are

clear and free from doubt. *Id.* In all summary judgment cases, the record must be reviewed in a light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.*

6. It is well settled that this Court may affirm the decision of the immediate lower court on any basis without regard to the basis upon which the lower court relied. *Shearer v. Naftzinger,* 560 Pa. 634, 747 A.2d 859 (2000); *Braxton v. Department of Transportation,* 160 Pa.Cmwlth. 32, 634 A.2d 1150 (1993), *petition for allowance of appeal denied,* 539 Pa. 682, 652 A.2d 1326 (1994).

7. The provisions of Division 3, Section 20 of the Restatement of Torts, relating to the strict liability of possessors and harborers of animals for the harm caused by those animals are not applicable in this case as there has been no allegation that the Association possessed or harbored the Conklins' dogs.

In general, the affirmative duties owed by a homeowners' association to its members has been recently summarized as follows:

(1) In addition to duties imposed by statute and the governing documents, the association has the following duties to the members of the common-interest community:

(a) to use ordinary care and prudence in managing the property and financial affairs of the community that are subject to its control;

(b) to treat members fairly;

(c) to act reasonably in the exercise of its discretionary powers including rulemaking, enforcement, and design-control powers;

(d) to provide members reasonable access to information about the association, the common property, and the financial affairs of the association.

Restatement (Third) of Property (Servitudes) § 6.13 (2000).

However, in this case, the Association's purported liability is premised upon the violation of its duty to control the Conklins' actions with respect to their dogs, and to protect McMahon from the harm flowing from the Conklins' actions with respect to their dogs. As the Pennsylvania Superior Court has previously noted:

As a general matter, there is no duty to control the acts of a third party unless a defendant stands in a "special relationship" with either the third party whose conduct needs to be controlled or the intended victim of such conduct. (Citations Omitted) [8] In Pennsylvania, "special relationships" are only those described in sections 316–319 in the Restatement of Torts (Second). *Id.* These special relationships include a parent's duty to control a child (§ 316), a master's duty to control a servant (§ 317), a landowner's duty to control a licensee (§ 318), and the duty of those in charge of individuals with dangerous propensities to control these individuals (§ 319).[9]

■ Thus, as noted by the trial court, a landlord may be held liable for injuries caused to a child by the dog of a tenant where the landlord retains control of the premises, has actual knowledge of the dog's violent propensities, and could have easily taken steps to eliminate the dog's presence and prevent the injuries. *See Palermo,* 483 A.2d at 873 ("Generally, a landlord out of possession is not responsible for attacks by animals kept by his tenant on leased premises where the tenant has exclusive control over such premises. However, a landlord out of possession may be held liable for injuries by animals owned and maintained by his tenant where the landlord has knowledge of the presence of the dangerous animal and where he has the right to control or remove the animal by retaking possession of the premises.") (citations omitted).

■ In the instant case, there is no allegation that the Association retained the right to control the lot on which the Conk-

---

8. Section 315 of the Restatement of Torts provides, in pertinent part:
 There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
 (a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives the other a right to protection.

9. *McCandless v. Edwards,* 908 A.2d 900, 903 n. 1 (Pa.Super.2006), *petition for allowance of appeal denied,* 592 Pa. 768, 923 A.2d 1174 (2007).

lins' dogs were kept, or that it had any authority to compel the removal of the dogs from the lot. *See, e.g., Palermo,* 483 A.2d at 873 ("Generally, a landlord out of possession is not responsible for attacks by animals kept by his tenant on leased premises where the tenant has exclusive control over such premises . . . .") (citations omitted); The Restatement (Third) of Property § 6.13(1)(a) clearly states that "the association has the following dut[y] to the members of the common-interest community: . . . to use ordinary care and prudence in managing the property . . . of the community *that [is] subject to its control* . . . ." (emphasis added).

In addition, there is no allegation that the relationship between the Association, the Conklins or McMahon rises to the level of any of the specific special relationships outlined in the Restatement of Torts. Likewise, there is no allegation that the Association undertook to provide any additional protections against an attack by the Conklins' dogs over and above the protections provided in the Dog Law, or that the Association undertook to assume the duty of those empowered to enforce its provisions.[10] In short, McMahon has failed to demonstrate that the Association should be held liable for the injuries caused by the Conklins' dogs under the relevant provisions of the Restatement of Torts.

Nevertheless, McMahon argues that, pursuant to the factors outlined in *R.W.,* a duty of care should be deemed to exist in this case. As noted above, in *R.W.,* the Pennsylvania Supreme Court outlined the following factors to be used in determining whether a duty of care exists in a particular case: (1) the relationship between the parties; (2) the utility of the defendant's conduct; (3) the nature and foreseeability of the risk in question; (4) the consequences of imposing a duty; and (5) the overall public interest in the proposed solution. *R.W.* at 347, 888 A.2d at 747. However, consideration of the last of these five factors is dispositive of McMahon's claim in this regard.

In *Lerro v. Upper Darby Township,* 798 A.2d 817 (Pa.Cmwlth.2002), a child and his mother were attacked by a pit bull and severely injured while visiting friends at an apartment. Prior to this attack, the dog had attacked at least three other individuals. After the first attack, the local township had quarantined the dog and had released it after receiving proof that the dog did not have rabies. The township did not quarantine the dog after the following two attacks, and did not notify the State dog warden. Following the last attack, the child and his mother sued both the dog's owner and the township to recover damages for their injuries. In particular, they asserted a cause of action against the township based upon its purported failure to enforce both the provisions of the Dog

---

**10.** The Dog Law is the Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. §§ 459–101 through 459–1205.

It should be noted that, regarding those statutorily empowered to enforce the provisions of the Dog Law,

**(a) General rule.**—The secretary, through the State dog wardens, employees of the department and police officers, shall be charged with the general enforcement of this law. . . .

Section 901(a) of the Dog Law, 3 P.S. § 459–901(a).

In addition, Section 302(a) of the Dog Law provides, in pertinent part:

**(a) General rule.**—It shall be the duty of every police officer, State dog warden, employee of the [Department of Agriculture] or animal control officer to seize and detain any dog which is found running at large . . . upon the property of a person other than the owner of such dog, and unaccompanied by the owner or keeper. . . .

3 P.S. § 459–302(a).

Law and the provisions of the township's Dog and Rabies Ordinance. The trial court granted the township's motion for summary judgment, and the court's order was affirmed on appeal by this Court based, *inter alia*, on the proposition that the Dog Law did not create a private cause of action.

In considering the enforcement provisions of the Dog Law, this Court stated the following, in pertinent part:

Enforcement of the State Dog Law is multi-faceted. The duty to report incidents of dog attacks appears to belong to the public generally, not just to municipalities. The Secretary of Agriculture has "general enforcement" responsibility for the State Dog Law, which makes the enforcement responsibility of municipalities, such as the Township, less than pellucid. Even if we were to resolve this conundrum by holding that the Township, along with [the Dog's owner], had a duty to report the attacks by the Dog to the State dog warden, it does not advance Appellants' case against the Township unless that duty is one enforceable by Appellants.

As noted, the party charged with enforcement of the State Dog Law is the Secretary of Agriculture. Section 901(a) of the State Dog Law, 3 P.S. § 459–901(a). To the extent the Township failed to fulfill its duty under the State Dog Law, it is the responsibility of the Secretary of Agriculture to take appropriate action. Our appellate courts have held that where the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals. In any case, even if reports of the Dog's attacks had been made to the State dog warden, there is no guarantee that the Depart-

ment of Agriculture would have responded by destroying the Dog or taken any action whatsoever. The General Assembly directed that the Secretary of Agriculture be responsible for enforcement of the State Dog Law in all particulars. Appellants cannot meet their threshold burden under [what is commonly referred to as the Political Subdivision Torts Claim Act [11] of showing that the Township has a duty to them under the State Dog Law that is enforceable in a private cause of action.

*Lerro,* 798 A.2d at 821–822 (citations and footnote omitted).

 Where, as here, the General Assembly has thoroughly considered the subject of the regulation of vicious dogs, and has enacted legislation in which the enforcement of the provisions of the Dog Law are solely vested in the Secretary of Agriculture, it militates against imposing a private duty upon the Association where one does not exist under the Dog Law. *See, e.g., Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 588, 590, 812 A.2d 1218, 1223, 1224 (2002) ("Here, our analysis turns upon the fifth [*R.W.*] factor, *i.e.,* the overall public interest in the proposed solution. The Legislature's enactments and the ensuing regulations reveal that acquisition, maintenance, and use of an [automated external defibrillator (AED)], along with AED training requirements are highly regulated. Where our lawmakers have so thoroughly considered the statewide application and implications of a subject, this Court must refrain from imposing additional requirements upon that legislation . . . .")

Based on the foregoing, it is clear that, as a matter of law, the Association did not have a duty or assume a duty to compel

11. 42 Pa.C.S. § 8541–8542.[sic].

the Conklins to maintain, control and confine their dogs on their property, or to prevent the harm to McMahon flowing from the Conklins' failure to control and confine their dogs on their property. As a result, the trial court did not err in granting the Association's motion for summary judgment, and McMahon's claim to the contrary is without merit.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 13th day of June, 2008, the Order of the Court of Common Pleas of Carbon County, dated June 11, 2007 at No. 05–2568, is AFFIRMED.