## Sedor v. Community Medical Center

C.P. of Lackawanna County, no. 05 CV 2143.

*Joseph T. Wright* and *Danielle M. Mulcahey,* for plaintiffs.

*Richard K. Hodges,* for defendants Community Medical Center and Rudd.

*Michael J. Revness* and *Robert T. Grolnick,* for defendants Soy, Sky Medical LLC, and Sky Orthopaedics LLC.

*James D. Golkow, Jennifer Reynolds,* and *Thomas A. O'Connor,* for defendants Biomet Inc., Biomet Orthopedics Inc., and Biomet Manufacturing Corp.

NEALON, *J.,* July 19, 2010—A neurosurgeon who was struck by a hospital bed that was being transported by a hospital employee with the gratuitous assistance of an orthopedic implants sales representative has filed suit

against those individuals, their employers and the manufacturer and distributor of the orthopedic implants that were being delivered to the hospital by the independent contractor sales representative. Following a partial summary judgment ruling that no master-servant relationship existed between the implants distributor and the salesman for purposes of vicarious liability, the implants manufacturer and distributor filed another summary judgment motion arguing that the neurosurgeon cannot establish the duty and causation elements of a negligence claim as a matter of law. Since the record does not support in any manner the conclusion that the manufacturer or distributor had a duty to instruct an independent contractor's employee to refrain from handling another party's equipment, the neurosurgeon has not established that the manufacturer or distributor owed a duty to train a nonemployee "not to handle or transport beds or any other large equipment within the hospital." Consequently, the supplemental motion for summary judgment filed by the implants manufacturer and distributor will be granted.

## I. FACTUAL BACKGROUND

This personal injury suit arises from an incident which occurred on February 22, 2005 in the corridor of the operating room suite at defendant Community Medical Center (CMC). On that date, a neurosurgeon, plaintiff David J. Sedor MD. was reviewing a medical chart at the nurses' station while a CMC employee, defendant Nadine Rudd, was attempting to transport a hospital bed through the hallway. Also present in the surgical suite corridor was an orthopedic products sales representative, defendant John Soy, who was employed by defendant

Sky Medical LLC.[1] On his own initiative, Soy offered assistance to Rudd in transporting the bed and as they were negotiating a turn in the vicinity of the nurses' station, they struck Dr. Sedor with the bed.[2] (Deposition of Nadine Rudd dated 3/1/06, pp. 25-26; deposition of John Soy dated 5/23/06, pp. 10-11, 27-30, 33-35, 37, 40-43, 46-60.) Dr. Sedor maintains that he suffered injuries and associated infections as a result of the impact, which ultimately required him to undergo a mid-thigh amputation of his right leg. (Plaintiffs' second amended complaint, ¶¶18, 24, 38.)

At the time of the bed incident, Soy's employer, Sky Medical, was a party to a distributorship agreement with

---

1. From 2003 to 2006, Sky Medical operated as the exclusive distributor of orthopedic implants sold by Biomet Orthopedics Inc. under the Biomet trademark. In 2006, Sky Medical's owners, Gerald Langan and William Walling, ceased Sky Medical's relationship with Biomet Orthopedics Inc. and entered into a new distributorship agreement with a different orthopedic products manufacturer, Zimmer Incorporated. In consummating their new distributorship arrangement, Mr. Langan and Mr. Walling dissolved Sky Medical LLC and formed a separate entity, Sky Orthopaedics LLC. (Deposition of Gerald Langan dated 6/18/08, pp. 6, 10, 12-15.) Plaintiffs have named Sky Orthopaedics LLC as a defendant in this matter.

2. Although Soy's entire deposition is contained in the court record, only selected portions of Rudd's deposition and the initial deposition of Dr. Sedor on March 1, 2006 have been produced as exhibits. The complete transcript of Dr. Sedor's second deposition on August 28, 2008 is included in the reproduced record, but does not contain any questioning or testimony relating to the incident on February 22, 2005. (See Biomet defendants' supplemental motion for summary judgment, exhibits C, E; plaintiffs' brief in opposition, exhibits A-B.) Soy testified that the bed "bumped" Dr. Sedor in the buttocks whereas Rudd described the point of impact as Dr. Sedor's "hip" area. (Rudd depo., 26; Soy depo., pp. 11-13, 48, 55-56.) In his second amended complaint, Dr. Sedor has averred that the bed struck "him forcefully on the right knee, lower leg and foot." (Plaintiffs' second amended complaint, ¶17.)

defendant Biomet Orthopedics Inc, which granted Sky Medical "the exclusive right to promote the sale of products of Biomet Orthopedics Inc." in an 18-county region.[3] The Biomet-Sky Medical agreement specifies that Sky Medical would act "as a commission sales representative for Biomet" with the full understanding that Sky Medical was "an independent contractor and not an employee of Biomet." (Biomet-Sky Medical distributorship agreement dated 4/16/03, p. 1.) The agreement distinctly states that Sky Medical "will not be deemed an agent of Biomet for any purpose whatsoever and neither [Sky Medical] nor any of its agents or employees will have any right or authority to assume or create any obligation of any kind, whether express or implied, on behalf of Biomet." (*Id.* p. 2.) Biomet agreed to indemnify Sky Medical only for those claims "arising from or alleged to arise from any deficiencies or defects in the design, manufacture, packaging or labeling of Biomet products causing bodily injury (including death) or property damage to others." (*Id.,* p. 11; deposition of Gerald Langan dated 6/18/08, pp. 45-47; deposition of William A. Hartman dated 8/27/08, pp. 11, 23-26.) It is undisputed that Biomet has never manufactured, sold or distributed hospital beds. (Langan depo., p. 38; Hartman depo., p. 23.)

---

3. Defendant Biomet Manufacturing Corporation manufactures medical devices, but does not sell or distribute the devices that it manufactures. Rather, the sale of those devices is conducted by defendant Biomet Orthopedics Inc., which is a wholly owned subsidiary of defendant Biomet Inc. (Affidavit of William A. Hartman, director of product management for Biomet Orthopedics, LLC, f/k/a Biomet Orthopedics Inc., ¶¶5-6.) For ease of reference, the Biomet defendants will be referred to collectively as "Biomet."

198

In his capacity as a sales representative for Sky Medial, Soy was responsible for (a) delivering orthopedic implants and instrumentation to surgeons for hip, knee, shoulder and elbow procedures and (b) being present during all orthopedic implant operations in order to provide technical assistance to the surgical team.[4] (Soy depo., pp. 6-7, 9, 16; Langan depo., pp. 9, 49; Hartman depo., p. 24.) On the date in question, Soy was present in the CMC operating suite while he was "covering cases for Sky Medical." (Soy depo., p. 44.) The movement of hospital beds was not within the scope of Soy's employment responsibilities, and Soy was not promoting Biomet's products or furthering its business interests when he assisted Rudd in transporting the CMC bed. (Gerald Langan depo., pp. 41-42, 50; Hartman depo., p. 24.) In fact, Dr. Sedor's own liability expert, Elizabeth H. Arruda R.N., B.S.N., has opined that "[i]n his role of orthopedic sales representative, Mr. Soy should have had no contact with hospital equipment outside of his product line." (Report of Elizabeth H. Arruda R.N., B:S.N. dated 8/12/08 at p. 4.) Ms. Arruda has concluded that "Mr. Soy worked outside of this role" when he assisted Rudd in pushing the bed. (*Id.*)

It bears noting that prior to his employment with Sky Medical, Soy worked as a nurses aide and scrub nurse at CMC from 1992 to 2003. (Soy depo., p. 7.) During

---

4. As per sections 1(a) and 6(a) of Soy's employment agreement, Soy's contractual duties included the marketing of Sky Medical's products, the establishment and maintenance of sales and service relationships, attendance at sales meetings and training sessions, and non-dissemination of confidential or proprietary information of Sky Medical. (See Sky Medical-Soy "Employee sales representative agreement" dated 8/4/04 pp. 1, 3.)

the course of his CMC employment, Soy viewed a training video which discussed the proper transportation of hospital beds and equipment. (*Id.,* pp. 31-33.) Moreover, Soy has expressly testified that as of February 22, 2005, he knew that he "shouldn't handle any of the hospital equipment" as a Sky Medical sales representative. (*Id.,* p. 69.)

Biomet filed a motion for summary judgment seeking to dismiss Dr. Sedor's claim for vicarious liability based upon the actions of Soy or Sky Medical. In opposing Biomet's motion, Dr. Sedor argued, inter alia, that he also has advanced a direct liability claim against Biomet for "failing to properly train agents, servants and employees not to handle or transport beds and other large equipment within hospitals." (Plaintiffs' second amended complaint, ¶37(a).) Relying upon the language of the Biomet-Sky Medical distributorship agreement and the Sky Medical-Soy employment agreement, the depositions and discovery materials submitted by the parties and the governing precedent, Judge Robert A. Mazzoni granted Biomet's motion for summary judgment "as it pertains to [Sedor's] vicarious liability claim only" by holding as a matter of law that no master-servant relationship existed between Biomet and Soy/Sky Medical. (Trial court opinion dated 6/25/09 at p. 19.) However, Judge Mazzoni deferred any ruling with regard to Dr. Sedor's "negligent training" claim and stated:

"This court's inquiry is limited in scope. [Biomet's] motion for summary relief addresses whether defendant Biomet is *vicariously liable* for the conduct of Sky Medical/Soy predicated on an alleged master-servant relationship. As reflected in plaintiffs' second amended

complaint, there are direct claims of liability directed against Biomet. (See para. 37(a) of plaintiffs' second amended complaint.)" (*Id.,* at p. 4 n.2) (emphasis in original)

Following the completion of discovery, Biomet presented a supplemental motion for summary judgment seeking to dismiss Dr. Sedor's remaining claim for failure to "properly train [Soy] not to handle or transport beds and other large equipment within hospitals." Biomet maintains that its product line is limited to orthopedic implants and instrumentation and has never included hospital beds. Citing uncontroverted discovery materials, Biomet further notes that Soy's employment responsibilities with Sky Medical required him to deliver implants and instrumentation to the hospital for use by orthopedic surgeons and to answer any physician inquires at the time of surgery. Biomet asserts that Dr. Sedor's negligent training claim should be dismissed based upon the lack of an actionable duty since "there is no legal authority for the imposition of a legal duty on Biomet to train independent contractors in areas well outside of [its] product line and having nothing to do with their job." (Biomet defendants' supplemental motion for summary judgment, ¶19.)

Biomet also argues that Dr. Sedor is unable to establish the requisite causal connection between Biomet's purported negligence and any harm suffered by Dr. Sedor. As noted above, Soy has testified that during his prior employment with CMC, he viewed a training video which included instruction regarding the proper pushing and pulling of a hospital bed. Additionally, Soy conceded during his discovery deposition that he knew that

he was not allowed to handle any hospital equipment while he was present at the CMC as a Sky Medical sales representative. Thus, inasmuch as Soy had already received training regarding safe transportation of hospital beds and was admittedly aware that he should not handle CMC's equipment, Biomet contends that its alleged failure "to properly train [Soy] not to handle or transport beds and other large equipment within hospitals" cannot constitute the proximate cause of Dr. Sector's alleged harm. (Biomet defendants' brief in support, p. 9.)

Dr. Sedor counters that pursuant to the Biomet-Sky Medical distributorship agreement, "Biomet undertook the obligation to train Sky's employees in the sale and distribution of Biomet's products." (Plaintiffs' brief in opposition, p. 9.) Dr. Sedor posits that "[w]hen orthopedic sales representatives are placed in the operating room arena in the context of the sale of orthopedic devices, it is foreseeable that they may utilize or handle hospital equipment which has no part in their duties." (*Id.,* p. 11.) According to Dr. Sedor, it also "was foreseeable that harm could be occasioned by the failure to properly train the [Sky Medical] employees regarding what they could and could not do in the hospital setting," (*Id.,* p. 9.) Following the completion of oral argument on June 29, 2010, Biomet's supplemental motion for summary judgment became ripe for disposition.

## II. DISCUSSION

### (A) *Standard of Review*

Summary judgment is appropriate only where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law. *Barnish v. KWI Building Company,* 602 Pa. 402, 420, 980 A.2d 535, 546 (2009). When considering a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Chepkevich v. Hidden Valley Resort L.P.,* 2010 WL 2482363 at * 1 n.1 (Pa. 2010); *Abrams v. Pneumo Abex Corp.,* 602 Pa. 627, 634-35, 981 A.2d 198, 203 (2009). The moving party bears the burden of proving that no genuine issue of fact exists and that the movant is entitled to judgment as a matter of law. *Stimmler v. Chestnut Hill Hospital,* 602 Pa. 539, 554, 981 A.2d 145, 154 (2009).

For a plaintiff to prevail in a negligence action, the plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff recognized by the law; (2) the defendant breached or failed to conform to that duty; (3) a causal connection exists between the breach and the plaintiff's resulting injury; and (4) the plaintiff suffered an actual loss or damage. *Merlini ex rel. Merlini v. Gallitzin Water Authority,* 602 Pa. 346, 354, 980 A.2d 502, 506 (2009); *Boyanosky v. Gould Inc.,* 46 D.&C. 4th 164, 170-71 (Lacka. Cty. 1999). The existence of a duty is a question of law for the court to decide. *R. W. v. Manzek,* 585 Pa. 335, 346, 888 A.2d 740, 746 (2005); *Montagazzi v. Crisci,* 994 A.2d 626, 631 (Pa. Super. 2010); *Jones v. Bresset,* 47 D.&C.4th 60, 70 (Lacka. Cty. 2000). If a plaintiff fails to establish the existence of a cognizable duty, the plaintiff cannot maintain a cause of action in negligence and summary judgment in favor of the defendant is appropriate. *McMahon v. Pleasant Valley*

*West Association,* 952 A.2d 731, 735 (Pa. Super. 2008), *appeal denied,* 599 Pa. 702, 961 A.2d 860 (2008).

Proximate cause similarly has been described as "essentially an issue of law," *Matos v. Rivera,* 436 Pa. Super. 509, 515-16, 648 A.2d 337, 341 (1994), *appeal denied,* 540 Pa. 632, 658 A.2d 795 (1995), and a finding of causation depends upon whether the policy of the law will extend legal responsibility for the defendant's alleged negligent conduct to the consequences that have in fact occurred. *Brown v. Philadelphia College of Osteopathic Medicine,* 760 A.2d 863, 868 (Pa. Super. 2000), *appeal denied,* 566 Pa. 632, 781A.2d 137 (2001); *Novak v. Jeannette District Memorial Hospital,* 410 Pa. Super. 603, 606, 600 A.2d 616, 618 (1991). It is incumbent upon the trial judge to make a threshold determination of proximate cause before submitting the issue of actual cause to the jury. *Brown, supra; Midgette v. Wal-Mart Stores Inc.,* 317 F. Supp.2d 550, 563 (E.D. Pa. 2004) (holding that store's failure to train employees on how to recognize and address domestic abuse and to have adequate work place security could not constitute proximate cause of harm suffered by female employee who was shot by her abusive husband in defendant's store after he purchased ammunition there), *aff'd.,* 121 Fed. Appx. 980 (3d Cir. 2005). Where the remoteness of a causal connection between the defendant's conduct and the harm suffered is so clear that a jury could not reasonably differ on the question of causation, it is the function of the court to decide the issue of causation as a matter of law. See *Brown,* 760 A.2d at 868-69; *Askew by Askew v. Zeller,* 361 Pa. Super. 35, 42, 521 A.2d 459, 463 (1987); *Boice v. Tyler Memorial Hospital,* 2007 WL 2903424 at * 6 (M.D. Pa. 2007) (Vanaskie, J.).

## (B) *Duty To Train Third Party*

The only remaining claim against Biomet which was not dismissed by Judge Mazzoni is the assertion that Biomet was negligent for "failing to properly train agents, servants and employees not to handle or transport beds and other large equipment within hospitals." However, since Judge Mazzoni declared as a matter of law that no master-servant relationship existed Biomet and Soy, the allegation that Biomet failed "to properly train agents, servants and employees" would not encompass a non-employee such as Soy. Nevertheless, assuming arguendo that Dr. Sedor's negligent training claim could be interpreted as referencing Soy, we must decide whether Biomet had a legal duty to train an independent contractor to refrain from moving a hospital bed while that individual was present in an operating room suite.

The determination of whether a duty exists in a particular case involves the weighing of the following five factors: (1) the relationship between the parties; (2) the social utility of the defendant's conduct; (3) the nature of the risk and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution. *Manzek,* 585 Pa. at 347, 888 A.2d at 747; *Montagazzi, supra.* In deciding whether to create a duty of care in a given context, the most important consideration is social policy, *McCandless v. Edwards,* 908 A.2d 900, 903 (Pa. Super. 2006), *appeal denied,* 592 Pa. 768, 923 A.2d 1174 (2007); *F.D.P. v. Ferrara,* 804 A.2d 1221, 1231 (Pa. Super. 2002), *appeal denied,* 577 Pa. 721, 847 A.2d 1286 (2004).

Generally, there is no duty to control the acts of a third party unless the defendant stands in a "special relation-

ship" with either the person whose conduct needs to be controlled or the intended victim of such conduct. *McMahon*, 952 A.2d at 736 (citing Restatement (Second) of Torts §315); *Paliometros v. Loyola*, 932 A.2d 128, 133 (Pa. Super. 2007); *Ferrara*, 804 A.2d at 1228. In Pennsylvania, such "special relationships" are limited to those described in sections 316-319 of the Restatement (Second) of Torts and include a parent's duty to control a child (section 316), a master's duty to control a servant (section 317), a landowner's duty to control a licensee (section 318), and the duty of those in charge of individuals with dangerous propensities to control those particular individuals (section 319). *McMahon, supra; McCandless*, 908 A.2d at 903 n.1; *Brisbine v. Outside In School of Experiential Education Inc.*, 799 A.2d 89, 93 (Pa, Super. 2002), *appeal denied*, 572 Pa. 746, 816 A.2d 1101 (2003). None of the relationships identified in sections 316-319 of the Restatement applies to the relationship which existed between Soy and Biomet on February 22, 2005.[5]

---

5. In limited circumstances, a contract may create a duty which requires a party to the agreement to use due care in performing a contract for the benefit of the other party to the agreement, as well as for third parties, depending upon the nature of the undertaking in the contract. See *Boyanosky*, 46 D.&C.4th at 171-75 (subcontractor retained to develop safety plan for remediation work at Superfund site assumed a legal duty of care to protect the safety of all workers at the site, because the subcontractor expressly agreed to ensure that the workers were provided with training and safety equipment and to correct any conditions that could result in hazardous exposure or injury). However, the Biomet-Sky Medical agreement only provides assurances related to Biomet's own products and does not express or imply training requirements pertaining to other entity's products that theoretically could be present in a hospital setting. Therefore, there is no contractual basis for imposing upon Biomet the training duty being advocated by Dr. Sedor.

Examination of the relevant criteria which govern every duty analysis does not support the recognition of a duty on the part of Biomet to provide training to an independent contractor's employee relative to the movement of hospital beds or the handling of hospital equipment. First, with regard to the relationship between the parties, Biomet had no relationship with Dr. Sedor since he is not an orthopedic surgeon who Sky Medical solicited to utilize Biomet implants during surgery. As for Soy's status vis-à-vis Biomet, he was the employee of an independent contractor, Sky Medical, and did not stand in a "special relationship" with Biomet at the time of the subject incident. Biomet arguably had an obligation to furnish instruction to Sky Medical's employees regarding the Biomet products that they distributed, and Biomet did in fact provide "total product line training" to Soy concerning the design, features, and use of Biomet's products. (Langan depo., pp. 16-17, 25-26, 38; Hartman depo., pp. 12-13.) But Biomet has never manufactured or sold hospital beds and did not have the legal responsibility to instruct or train an independent contractor's employee not to handle or transport hospital beds. Indeed, neither Biomet nor Soy's own employer, Sky Medical, offered any instruction to Soy relating to the movement of hospital beds.[6] (Langan depo., pp. 30-31; Hartman depo., p. 21.)

Second, the social utility of the proffered training does not weigh in favor of imposing a duty to instruct independent contractors to refrain from handling hospital equipment. Compare, *Lindstrom v. City of Corry,* 563

6. It is foreseeable that a scrub nurse or nurse's aide will handle or transport beds, and Soy did receive training addressing the proper movement of hospital beds during his earlier employment with CMC. (Soy depo., pp. 7, 31-33.)

Pa. 579, 585, 763 A.2d 394, 397 (2000) (holding that municipality owed no common-law duty to a fleeing motorist and stating that "[t]he second factor weighs against imposing a duty, as the social utility of a police officer's attempt to apprehend a person suspected of violating the law is beyond dispute.") *and Kenner v. Kappa Alpha Psi Fraternity Inc.,* 808 A.2d 178, 183 (Pa. Super. 2002) (finding that fraternity had a duty to protect fraternity initiate from harm and reasoning that "[t]he second factor weighs in favor of imposing a duty, as the social utility of a national fraternity's efforts to stop hazing is not in dispute."), *appeal denied,* 575 Pa. 697, 836 A.2d 122 (2003), Biomet provides training to its independent contractors' employees with respect to Biomet's implants and instrumentation which those sales representatives will be required to handle. According to Dr. Sedor's expert and the deposition testimony of Soy and his employer, Soy was acting outside the scope of his employment responsibilities when he assisted Rudd in transporting CMC's bed. Dr. Sedor has not articulated the proposed social utility of extending Biomet's training duties to include the equipment of others which those sales representatives admittedly should not handle. See *Althaus ex rel. Althaus v. Cohen,* 562 Pa. 547, 554, 756 A.2d 1166, 1170 (2000) (declining to recognize a duty of care toward the parents of a sexual abuse victim and observing that "social utility disfavors expanding therapists' duty of care to non-patients, especially where the non-patients are the accused victimizers.").

The third factor—the foreseeability of the risk and harm involved—militates strongly against the creation of a duty on the part of Biomet. The tortious incident in dispute did not involve a Biomet product nor did it occur during an orthopedic implant procedure which war-

ranted Soy's presence in the surgical suite. Since Dr. Sedor was not an orthopedic surgeon using Biomet implants or instrumentation, it was not foreseeable to Biomet that a Sky Medical employee would have any contact with Dr. Sedor. Moreover, although Biomet clearly should have anticipated that Sky Medical's sales representatives would handle Biomet's equipment, it could not foresee that those sales representatives would act outside the scope of their employment responsibilities by assisting with the transport of hospital beds.[7] It is unreasonable to require a party to train another party's employee to abstain from conduct that is wholly unforeseeable.

Fourth, it would be unduly burdensome and costly for orthopedic product manufacturers or distributors to be required to provide training or instruction to non-employees about the use of equipment owned by other parties. See, *Commerce Bank/Pennsylvania v. First Union National Bank,* 911 A.2d 133, 139 (Pa. Super. 2006) (finding that banks do not owe a duty to take action against any account being used in check-kiting scheme so as to protect third-party banks from future similar conduct, and remarking that "[t]he consequences of imposing a duty would prove onerous."). If such an obligation were to be recognized, the breadth of that duty would be limitless. For example, an independent contractor who is similarly motivated by samaritanism could theoretically offer assistance to a maintenance worker struggling to clean a rapidly spreading spill of liquid on

---

7. As per the Biomet—Sky Medical distributorship agreement, Biomet agreed to indemnify Sky Medical only for any personal injury claims allegedly arising from deficiencies or defects in the design, manufacture, packaging or labeling of Biomet products.

the floor or a health care professional rushing to board an elevator in an emergency. Recognition of the duty proposed by Dr. Sedor could conceivably obligate Biomet and other medical device distributors to train independent contractors' employees not to touch elevator doors or buttons, pails, mops, or an infinite supply of equipment that may be owned by hospitals. See, *Wisniski v. Brown & Brown Ins. Co. of PA,* 906 A.2d 571, 581 (Pa. Super. 2006) (concluding that insurance brokers have no duty to inspect a business property for purposes of offering flood insurance and stating that "[i]f this court recognized a duty of brokers to inspect business properties, it is difficult to see a principled basis for failing to extend that duty to homes, land, cars, boats, and other insurable items."), *appeal denied,* 591 Pa. 728, 920 A.2d 834 (2007). Individualized training of that magnitude would prove to be inordinately expensive, with the resulting additional cost ultimately being passed on to those patients receiving orthopedic implants. See, *Salvatore v. State Farm Mutual Automobile Insurance Company,* 869 A.2d 511, 515 (Pa. Super. 2005) (declaring that automobile insurer which sold previously stolen automobile to a dealer at public auction owed no duty to a subsequent buyer to insure that the car was removed from the National Crime Information Center (NCIC) computer database of stolen vehicles prior to placing the car in the stream of commerce, and reasoning that "[r]equiring insurers to expend additional time and resources to assure that every stolen car that is returned is properly removed from the NCIC would be costly and unnecessary."). Thus, the consequences of imposing such a training duty upon Biomet would be arduous and costly.

Finally, there does not appear to be a strong public interest in requiring a medical product manufacturer or distributor to instruct independent contractors' employees to refrain from handling hospital beds or equipment. See *Atcovitz v. Gulph Mills Tennis Club Inc.,* 571 Pa. 580, 588-90, 812 A.2d 1218, 1223-24 (2002) (analyzing the overall public interest in the proposed solution and finding that a tennis club did not owe a duty to acquire and maintain an automated external defibrillator on its premises for emergency use). Dr. Sedor asserts "that Biomet is in business and its only interest is to sell its product and earn profits" such that "the risk should fall on Biomet rather than the innocent victim." (Plaintiffs' brief in opposition, p. 12.) However, Sky Medical and the other "commission sales representative[s] for Biomet" are in the best position to train their own employees, and to the extent that any duty exists to instruct orthopedic sales representatives not to handle hospital equipment, that responsibility should be borne by the sales representatives' employers. *Excavation Technologies Inc. v. Columbia Gas Company of Pennsylvania,* 936 A.2d 111, 121 (Pa. Super. 2007) ("Permitting recovery for excavators, designers, or project owners for a utility's inaccurate marking of its lines would unreasonably shift the burden of risks away from those parties that can contractually provide for such risks and place the economic risk for delay in completing the project on a party not involved in the project's contractual negotiations."), *affirmed,* 640 Pa. 50, 985 A.2d 840 (2009).

Based upon the foregoing factors, and even after examining the record in the light most favorable to the non-moving party, Dr. Sedor has failed to establish that Biomet had a duty to train Soy not to handle hospital beds or large equipment while he was present in the

surgical suite at CMC. Hence, Dr. Sedor cannot maintain a cause of action in negligence against Biomet.[8] As such, Biomet has demonstrated that it is clearly entitled to judgment as a matter of law and its supplemental motion for summary judgment will be granted.

## ORDER

And now, July 19, 2010, upon consideration of "defendants Biomet Inc., Biomet Orthopedics Inc, and Biomet Manufacturing Corporation's supplemental motion for summary judgment," the exhibits and memoranda of law submitted by the parties, and the oral argument of counsel on June 29, 2010, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) The supplemental motion for summary judgment filed by defendants Biomet Inc., Biomet Orthopedics Inc, and Biomet Manufacturing Corporation is granted; and

(2) The clerk of Judicial Records is directed to enter judgment in favor of defendants Biomet Inc., Biomet Orthopedics Inc. and Biomet Manufacturing Corporation *only*.

---

8. Since Dr. Sedor has failed to demonstrate the existence of a duty on Biomet's behalf, it is unnecessary to address Biomet alternate argument that any causal connection between its conduct and Dr. Sedor's harm is so remote that a jury could not reasonably differ on the absence of proximate causation. However, it is difficult to envision how a jury could conclude that the lack of training by Biomet to refrain from handling hospital beds could constitute the proximate cause of Dr. Sedor's injuries in light of the fact that Soy has admitted that he already knew that he "shouldn't handle any of the hospital equipment." (Soy depo., p. 69.) In essence, Biomet would be instructing or training Soy to avoid doing that which he knew he should not do as a sales representative.